IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

THE SHELL CO., LTD.,

    **Plaintiff,**

        **v.**               **CIVIL NO.** 03-1623 (FAB)

LOS FRAILES SERVICE STATION,
INC.,

    **Defendant.**

### OPINION AND ORDER

BESOSA, District Judge.

On February 13, 2007, plaintiff Sol Puerto Rico Limited ("Sol"), previously known as The Shell Company (Puerto Rico) Limited ("Shell PR"),[1] filed a brief requesting statutory damages pursuant to the Lamham Act §35(c), 15 U.S.C. § 1117(c) (Docket No. 182). On February 28, 2007, defendant Los Frailes Service Station, Incorporated ("LFSS") filed an opposition brief (Docket No. 183). Sol replied to the opposition on March 3, 2007 (Docket No. 186). The sur-reply filed by LFSS on March 22, 2007, was struck from the record by the Court on September 30, 2008 (Docket Nos. 189 & 230). These filings were followed by three so called informative motions containing legal arguments filed by LFSS (Docket Nos. 195, 209, 211). Sol opposed two of these informative

---

[1] Shell PR was the initial plaintiff in this case. On August 31, 2006, Sol purchased all of the shares of Shell PR. Accordingly, Sol stepped into the shoes of Shell PR, and has assumed all of the rights and liabilities of Shell PR in regards to the litigation at hand.

motions (Docket Nos. 205, 210).  Lastly, the Court granted Sol's unopposed motion to withdraw the reference of proof of claim number 11 from the Bankruptcy Court.

For the reasons provided below, the Court **DENIES** plaintiff's motion for statutory damages, **DENIES** LFSS's motion for additional rent (withdrawn from the Bankruptcy Court), and **AMENDS** its January 31, 2007 Order.

## I.   Procedural History

If this case were a child, it would now be entering kindergarten.  Plaintiff Shell PR filed the initial complaint on June 3, 2003.  On August 12 of that same year, defendant LFSS answered the complaint and included a counterclaim against Sol. The Court issued a preliminary injunction on December 2, 2003.  The injunction directed LFSS to, among other things, immediately surrender the service station to Sol, immediately comply with all post-termination covenants of the franchise agreements, and to cease and desist from further use of all Shell trademarks, trade dress and color patterns.  The Court based the preliminary injunction upon its interpretation of the contracts entered into by the parties, the application of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801, *et seq.*, and the application of the Lanham Trademark Act, 15 U.S.C. §§ 1125(a) and 1114(1).

Subsequent to the issuance of the preliminary injunction roughly three years passed during which the parties sparred over

discovery obligations and engaged in settlement negotiations.  On July 19, 2006, defendant (and counterclaimant) LFSS filed for bankruptcy.

On January 23, 2007, the Court issued an opinion and order in which it granted Sol's motion for partial summary judgment and dismissed the counterclaims raised under the Robinson Patman Act and under Puerto Rican antitrust law.  Two days later the defendant was ordered to show cause why the preliminary injunction should not be made permanent.  The Court held a show cause hearing on January 29, 2007.  At the hearing the Court issued several orders, which it memorialized two days later.  These included, among other things, an order dismissing with prejudice defendant's counterclaim for breach of contract and for additional rent due, as well as an order converting the preliminary injunction into a permanent injunction.[2]  The parties were also ordered to provide the Court

---

[2] The Court ordered that LFSS, its successors, and those persons in active concert or participation with LFSS were:

> (A) ORDERED AND COMPELLED to allow the plaintiff to continue in possession of the Los Frailes Service Station, along with the subterraneous storage tanks and all pertinent equipment, until the expiration of plaintiff's rights under the lease agreement between the parties;
> (B) ORDERED AND COMPELLED to comply with all post-termination covenants of the franchise agreements held with the plaintiff; and
> (C) ENJOINED PERMANENTLY from further use of all Shell trademarks, trade dress, and color patterns.

(Docket No. 180, pp. 2-3.)

with briefs concerning the statutory damages which plaintiff claimed under the Lanham Act.  Not only did both parties tender briefs on this issue, but they provided additional filings on the related factual issue of whether Sol was a registrant, assignee or exclusive licensee of the DEFENDA trademark.  These later briefs also reached the issue of whether the court had jurisdiction to issue the preliminary and permanent injunctions if the plaintiff was not the registrant, assignee or exclusive licensee of the DEFENDA trademark.

In addition, upon Sol's unopposed motion, the Court withdrew reference from the Bankruptcy Court as to the adjudication of the proof of claim number 11 filed in 06-2371 (GAC).  The proof of claim related to "misbranding and lost profits claims in civil No. 03-1623 (FAB)."  (Docket No. 208-2.)

## II.  Facts

### A.    A brief background to the dispute[3]

LFSS owns certain real property located at the intersection of State Road 177 and Muro Street in the Los Frailes community of Guaynabo, Puerto Rico.  A Shell gasoline service station has existed at this location since 1967.  Shell PR entered into the operative Lease Agreement with LFSS for the use of the LFSS service station on February 19, 1992.  The lease was amended

_____

[3] For a more detailed factual recitation see the orders issued on December 12, 2003 and on January 23, 2007 (Docket Nos. 40 & 171, respectively).

on April 11, 1997 to extend its duration until February 28, 2014.
The same day that the lease was amended, Shell PR and LFSS entered
into a Sublease and Dealer agreement which granted LFSS the right
to retain possession of the leased premises and operate the
gasoline service station under the Shell marks (including marks,
registered marks, trademarks, names, service distinctions and color
patterns that Shell authorized the dealer to use).  Also on
April 11, 1997, Shell PR and LFSS entered into a Commodatum
Agreement regulating the use of the subterraneous tanks and other
equipment for the sale and storage of the petroleum products.

   All of these agreements were in effect when LFSS, because of
financial difficulties, failed to make payments on a timely basis.
On October 25 and 26, 2002, LFSS delivered three personal checks to
Shell PR to pay for three invoices that totaled $39,918.00.  These
three checks were returned for lack of funds and LFSS substituted
them with three certified checks.  LFSS's inability to cover these
three checks was just the beginning of a recurring pattern of
failure to pay rent timely.  In January of 2003, Shell PR placed
LFSS on a direct deposit payment plan, but LFSS's bank refused
payment for four invoices which totaled $52,083.00.  This amount
was later paid by certified check.  Later invoices went unpaid,
however, when LFSS's bank refused to honor personal checks and the
direct deposit payment plan for lack of funds.  By March of 2003,
LFSS owed Shell PR more than $89,000.00 and Shell PR refused to

sell more products to LFSS until the parties agreed on a new payment plan.  The parties agreed to a payment plan subject to the execution of a promissory note and additional security provided by LFSS.  LFSS also agreed to the implementation of Shell PR's hard cash payment policy requiring LFSS to pay for all subsequent purchases of petroleum products by means of certified checks at the moment of delivery.

Despite the recently agreed upon hard cash policy, also provided for in article 14.2 of the dealer agreement, LFSS paid for two deliveries on May 17 and 18 of 2003 with personal checks. Shell PR then informed LFSS that it would not deliver more petroleum products until LFSS complied with the hard cash payment policy.  LFSS refused to comply with that policy and subsequently exhausted the supply of gasoline at the station.  On May 21, 2003, LFSS sent a cancellation letter to Shell PR in which it purported to terminate immediately the entire business relationship between the parties.  That same date, LFSS proceeded to cover some of the Shell Marks identifying the gasoline service station and the equipment located there without Shell PR's consent.  The covered trademarks still easily identified the station and equipment, however, as a Shell station.  Shell's distinctive yellow and red trade dress remained unaltered throughout the station including upon the pumps; LFSS had simply covered the name "Shell."  The trademarked DEFENDA name, however, remained uncovered on a gasoline

pump.  LFSS admits that it was then storing and selling non-Shell petroleum products of a lesser quality.

Not surprisingly, LFSS's purported termination of the parties business relationship and its utilization of Shell equipment and marks to sell non-Shell gasoline triggered a response from Shell PR.  On May 23, 2003, Shell PR notified LFSS in writing that the franchise relationship between the parties, which existed by nature of the Sublease, Dealer and Commodatum Agreements, was terminated, effective immediately, and would not be renewed.  The termination was premised upon LFSS's failure to perform timely payments, its failure to operate the station as a Shell station, for infringing the Shell trademarks and for selling misbranded petroleum products under Shell Marks.

These same factual allegations provided the basis for Shell PR to move the Court for a preliminary injunction based upon the Lanham Act and the Petroleum Marketing Practices Act.  Finding in favor of Shell PR, the Court issued a preliminary injunction on December 2, 2003, in which it, among other things, directed LFSS to immediately surrender the station.   The injunction was made permanent on January 31, 2007.

**B.    Registration of the Defenda Trademark**

More  than  one  year  prior  to  the  issuance  of  the preliminary injunction, on October 9, 2002, Shell Trademark Management B.V. ("Shell BV"), a company incorporated in the

Netherlands, filed an application for the registration of the DEFENDA mark in the Benelux countries.[4]  On March 10, 2003, Shell BV applied to register the DEFENDA mark with the United States Patent and Trademark Office ("USPTO") pursuant to sections 1(b) and 44(d).  The USPTO issued the registration to Shell BV on August 30, 2005.

First Shell PR, and now Sol, claim to be exclusive licensees, authorized by Shell BV to utilize the DEFENDA trademark, as well as other Shell BV trademarks in Puerto Rico.  It is undisputed that Shell PR was indeed some type of licensee of Shell BV at the time that the dispute between the parties arose.  Nonetheless, Sol has failed to submit an agreement or other documentation to the Court which demonstrates the licensing relationship between Shell PR and Shell BV.  The only documentation concerning licensing by Shell BV that appears in the record is a "Trade Marks and Manifestations License Agreement" entered into by Shell BV and Sol signed August 31, 2006 (Docket No. 207).  The "grant of license" provision of the agreement expressly terms the license a "non-exclusive license."  Nonetheless, it also contains the following provision:

> "The Licensor undertakes that it shall not for a period ending on the date which is the earlier of
>
>     (a) ten (10) years after the Commencement Date, and

---

[4] Shell PR and Shell BV were independent companies.

        (b) the date on which the License Term ends, enter into another agreement with a Third Party granting the same rights in respect of the reproduction, use or display of the Trade Marks and the Manifestations for the marketing and sale of fuels at fuel retailing sites in the Territory, as the rights granted to the Licensee under this Agreement."

(Docket No. 207.)

The legal significance of this clause shall be discussed below, but in any event it may not be read to apply retroactively to the licensing relationship between Shell PR and Shell BV.

## III. Discussion

### A.    Introduction

On January 30, 2007, the Court ordered the parties to submit their briefs on the issue of statutory damages pursuant to section 35(c) of the Lanham Act.  The issue of statutory damages was the only issue left to be finally resolved.  In its motion requesting damages under the Lanham Act, Sol attached a USPTO document indicating that Shell BV (and not Shell PR or Sol) is the registered owner of the DEFENDA trademark.  This attachment triggered a multi-pronged response from LFSS that goes beyond the issue of statutory damages.  Among other things, LFSS in its opposition argues that Sol cannot bring a statutory damages claim because it is not the registrant of the DEFENDA trademark (Docket No. 183).  In its sur-reply, which was struck from the record, LFSS attempted to adduce new evidence to the record (Docket No. 189).  Lastly, in a series of later motions, LFSS argued that the earlier

rulings of the Court must be invalidated because they were made without proper subject matter jurisdiction (Docket Nos. 195, 209, 211).[5]

The Court will first address the sur-reply, then the statutory damages argument and third the jurisdictional argument.  The issues will be addressed in this order because the Court's evaluation of the sur-reply affects the factual record underlying the other issues in the case.  In addition, LFSS's ability even to raise the jurisdictional argument depends in part upon the Court's resolution of arguments raised in regards to the statutory damages claim. Finally, the Court also will address a withdrawal of reference from the bankruptcy court.  The withdrawal of reference involves both the Court's resolution of the Lanham Act statutory damages claim and a claim for additional rent due to LFSS.

**B.    Plaintiff's sur-reply to the statutory damages motion**

As briefly mentioned above, LFSS attempted to introduce new evidence in its sur-reply to plaintiff's motion for statutory damages (Docket No. 189).  LFSS claims, contrary to the express findings of the Court, that LFSS covered all of the Shell

---

[5] LFSS also raised an argument that the Court improvidently granted the preliminary injunction because the injunction was issued before the "effective" registration date of the DEFENDA trademark. (Docket Nos. 195, 209, 211) The Court finds that LFSS waived this argument by not raising it prior to the issuance of the permanent injunction on January 30, 2007.  This argument also fails on the merits; Shell BV applied for and obtained federal trademark priority and it also actually used the DEFENDA trademark prior to May of 2003.

trademarks including the DEFENDA trademark (although not the trade
dress).  LFSS then goes on to claim, for the first time, that a Mr.
Olivera from Shell PR removed gray tape that had been covering the
DEFENDA logo when he arrived at the service station in May of 2003.
According to LFSS, after removing the tape, Mr. Olivera took a
photo or the exposed DEFENDA logo, which the Court later relied
upon in its findings of fact.  This new factual claim is contained
within a sworn statement by Mr. Candido Rosa, who claims to have
been a shift supervisor at LFSS in May of 2003.[6]

If the Court were to credit the new factual allegation by LFSS
then Sol's claim for statutory damages would fail because Sol has
only based its claim upon the exposed DEFENDA mark.  The Court
shall not do so, however, because it holds that LFSS waived the
opportunity to raise this argument.

Although the new argument and evidence adduced here came in
the form of an opposition brief to the plaintiff's motion for
statutory damages, the Court shall consider it under Federal Rule
of Civil Procedure 59(e) because the Court has already issued its
final judgment on all other issues in the case except for Lanham
Act statutory damages.  Pursuant to Fed.R.Civ.P. 59(e), a party may
move a court to amend its judgment based upon "newly discovered
material evidence or a manifest error of law or fact[.]"  Aybar v.

---

[6] The sworn statement is dated March 16, 2007 (Docket No. 189-2).

Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997) (quoting Moro v.
Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996)).  "The rule does
not provide a vehicle for a party to undo its own procedural
failures, and it certainly does not allow a party to introduce new
evidence or advance arguments that could and should have been
presented to the district court prior to the judgment."  Id.; see
also Jorge Rivera Surillo & Co. v. Falconer Glass Indus, Inc., 37
F.3d 25, 29 (1st Cir. 1994) (citing F.D.I.C. v. World Univ., Inc.,
978 F.3d 10, 16 (1st Cir. 1992)).

The newly proffered evidence comes from LFSS's former shift
supervisor.  LFSS provides no explanation as to why this evidence
was not offered earlier.  Absent any extenuating circumstances,
which have not been brought to the Court's attention, LFSS should
have had this information in 2003, at the time that this case was
filed, because Candido Rosa was then an employee of LFSS.
Nonetheless, the evidence was not presented then.  Nor was it
presented in the two proposed pretrial orders filed with the Court
on March 28, 2005 (Docket No. 85) and on December 14, 2006 (Docket
No. 160), or in LFSS's opposition to Shell PR's motion for partial
summary judgment (Docket No. 154).  LFSS also failed to list
Candido Rosa as a proposed witness in the pretrial orders (Docket
Nos. 85, 160).  Moreover, LFSS actually stipulated in the second
pretrial order that LFSS covered some (and implicitly not all) of
the Shell marks (Docket No. 160, p. 54).  LFSS also failed to list

Mr. Rosa as a witness or question the authenticity of the photographs in the record at the pretrial hearing held on December 19, 2006 (Docket No. 161) or at the show cause hearing held on January 29, 2007 (Docket No. 181).   Thus, despite numerous opportunities, LFSS failed to raise any question concerning the legitimacy of the photographs in the record or to bring forth Candido Rosa as a witness.

Because LFSS does not present any argument that the information contained in Candido Rosa's sworn statement constitutes newly discovered material evidence, and because LFSS had ample opportunity to present Mr. Rosa's evidence earlier, the Court granted Sol's motion to strike LFSS's sur-reply from the record.[7] (See Docket No. 230.)

---

[7] The Court also strikes LFSS's sur-reply from the record because of LFSS's misleading conduct towards the Court.   In the District of Puerto Rico, parties must apply to the Court for permission to file a sur-reply. L.CIV.R. 7.1(c).   It is common practice in this District for parties to attach the proposed sur-reply to the motion for permission to file.   This practice allows the Court to "peek" at the merits of the sur-reply and ensure that it actually addresses new issues raised in the opposing parties' reply brief.   Indeed, in this case LFSS filed a motion for leave to file its sur-reply to which it attached a proposed sur-reply brief. (Docket No. 187)   The actual sur-reply filed, however, differed from the document attached to the motion for leave.   (Docket No. 189)   The Court cannot and will not condone such sleight of hand tactics.   Accordingly, LFSS's "bait and switch" of the sur-reply document provides a second basis for striking the sur-reply from the record.

**C.   Recovery of Statutory Damages Pursuant to the Lanham Act**

The Lanham Act allows a plaintiff to elect to recover statutory damages against defendants utilizing a counterfeit mark. 15 U.S.C. §§ 1114, 1117(c).  Plaintiffs may choose to recover the statutory damages rather than the more traditional award of actual losses.  15 U.S.C. § 1117(a) & (b); see also, Sara Lee Corp. V. Bags of New York, Inc., 36 F.Supp.2d 161, 165 (S.D.N.Y. 1999).

Specifically, subsection 15 U.S.C. § 1117(c) provides as follows:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
> (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).

A counterfeit mark is defined pursuant to section 1116(d) as

> (i)  A counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or

not the person against whom relief is sought knew such mark was so registered; or

(ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of Title 36; but such term does not include any mark or designation used on or in connection with goods or services of which the manufacture or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.

15 U.S.C. § 1116(d)(1)(B).

Relief under 15 U.S.C. § 1116(d) is restricted to those civil actions for the use of a counterfeit mark arising under 15 U.S.C. § 1114(1)(a) or 36 U.S.C. § 220506.  15 U.S.C. § 1116(d)(1)(A). Section 1114(1)(a), in turn, provides in relevant part, that any person who uses in commerce a counterfeit of a registered mark in connection with the sale, offering for sale or advertising of any goods in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable to the registrant of the mark.  15 U.S.C. § 1114(1)(a).

Sol argues that LFSS's use of the DEFENDA trademark to sell non-Shell gasoline constitutes a violation of 15 U.S.C. § 1114(1)(a) because it amounts to the use of a counterfeit mark which is bound to create confusion among the service station's customers.  The Court agrees that the use of the DEFENDA trademark to sell non-DEFENDA gasoline constitutes counterfeiting.  See United States v. Petrosian, 126 F.3d 1232, 1234 (9th Cir. 1997);

General Electric Co. v. Speicher, 877 F.2d 531, 534 (7th Cir. 1989); 4 McCarthy on Trademarks § 25:15.  So, too, the Court continues to believe that "confusion is an inevitable result of continued unauthorized use of the franchisor's trademarks." (Docket No. 40, p. 24)  Nonetheless, a factual issue has arisen at this stage that prevents the Court from concluding that there was a violation of 15 U.S.C. § 1114(1)(a).  Sol, or Shell PR as Sol was known at the time, was not the registrant of the DEFENDA trademark when the events underlying the claims in this case took place.

Section 1114(1)(a) restricts relief to trademark registrants. 15 U.S.C. § 1114(1)(a); Quabaug Rubber Co. v. Fabiano Shoe Co, Inc., 567 F.2d 154, 159 (1st Cir. 1977).  The term registrant includes assignees, 15 U.S.C. § 1127, and it may include exclusive licensees, Quabaug Rubber Co., 567 F.2d at 159-60, but it certainly does not include nonexclusive licensees.  Quabaug Rubber Co., 567 F.2d at 159-60; c.f., Icee Distributors, Inc. v. J&J Snack Foods Corp., 325 F.3d 586, (5th Cir. 2003) (finding that even an exclusive licensee does not have standing to sue under the Trademark Dilution Act).

In prosecuting its claim, Sol provided the Court with a document indicating that Shell BV is the registered holder of the DEFENDA trademark.  The Court then ordered the plaintiff to provide it with documentation indicating that it is the exclusive licensee for the use of Shell's trademarks in Puerto Rico.  Plaintiff

attempted to comply with this order by providing the Court with a document under seal, detailing the licensing agreement between SOL and Shell Trademark Management B.V.   Even if this document established that Shell PR was the exclusive licensee of Shell BV's trademarks, which it does not, it would still not serve plaintiff's needs because the agreement went into effect in August of 2006 (more than three years after the events giving rise to this case). Accordingly, the agreement submitted under seal fails to establish that Shell PR was the exclusive licensee of the DEFENDA trademark in Puerto Rico at the time of the events giving rise to the litigation.[8]  No other document in the record supports plaintiff's assertion that it was the exclusive licensee of the DEFENDA trademark.  Thus, because plaintiff has failed to show that it was the registrant, assignee or even the exclusive licensee of the DEFENDA trademark during May of 2003, plaintiff's motion for statutory damages pursuant to the Lamham Act §35(c), 15 U.S.C. § 1117(c) is denied with prejudice.

Furthermore, this late addition to the factual record in this case requires that the Court clarify its earlier order converting the preliminary injunction into a permanent injunction.   To the

---

[8] In fact, it may not even establish that Sol is an exclusive licensee as the term is utilized in Quabaug because it does not expressly provide that Shell BV itself is prohibited from utilizing the trademark in Puerto Rico during the term of the agreement.  See Quabaug, 567 F.2d at 159.  There is also the salient fact that the agreement itself states that the license is a non-exclusive license.

extent that the Court's injunctive order appeared to rest upon a provision of the Lanham Act other than 15 U.S.C. § 1125(a), that part of the order is vacated.  The Court hereby confirms, however, that LFSS violated the false designation of origin prong of 15 U.S.C. § 1125(a) because its sale of non-Shell products while displaying Shell trade dress and the DEFENDA trademark was likely to cause confusion as to the origin of the products sold.

**D.   Jurisdiction**

LFSS argues that the Court never had jurisdiction to hear this case because Sol, formerly Shell PR, is not and was not the registered owner of the Defenda Trademark and therefore had no standing to maintain a claim pursuant to 15 U.S.C. § 1114.  LFSS expands on this argument by adding that there is no original federal question jurisdiction for a franchisor's claim pursuant to the PMPA.  Sol argues in response that, regardless of the Court's resolution of the section 32 claim, it has standing for its false designation of origin claim under the broader provisions of section 43(a).

Section 43(a) provides standing to "any person who believes that he or she is or is likely to be damaged" by another's false designation of origin.  15 U.S.C. § 1125(1). Under this provision "one need not be the owner of a federally registered trademark to have standing in a federal court." <u>Quabaug Rubber Co.</u>, 567 F.2d at 160.  In fact, "anyone who may suffer adverse consequences from a

violation of section 1125(a) has standing to sue regardless of whether he is the registrant of a trademark." Id. Courts have allowed licensees (exclusive or nonexclusive), associations (acting on behalf of their members), and distributors to bring claims pursuant to section 1125(1). See id. (nonexclusive licensee may bring suit); Norman M. Morris Corp. v. Weinstein, 466 F.2d 137, 142 (5th Cir. 1972) (exclusive distributor may bring suit); Dial Corp v. Encina Corp., 643 F.Supp. 951, 953 (S.D.Fla. 1986); FRA S.p.A v. SURG-O-FLEX of America, Inc., 415 F.Supp. 421, 425-26 (S.D.N.Y. 1976) (exclusive distributor and its vice president may bring suit). To determine standing, courts look to whether a plaintiff has a "reasonable interest" to protect. See, e.g., Ortho Pharm. Corp. v. Cosprophar, Inc., 32 F.3d 690, 694 (2d Cir. 1994); Dovenmuehle v. Gilldorn Mortg. Midwest Corp., 871 F.2d 697, 699-00 (7th Cir. 1989); Smith v. Montoro, 648 F.2d 602, 608 (9th Cir. 1981); Quabaug, 567 F.2d at 160 (citing and quoting 1 R. Callmann, Unfair Competition, Trademarks & Monopolies § 18.2(b) at 625 (3d ed. 1967)); R.J. Toomey Co. v. Toomey, 683 F.Supp. 873, 876 (D.Mass. 1988). In this case, Sol's interest is entirely reasonable. The fact that Sol has failed to establish whether Shell PR was an "exclusive" licensee of the trademarks held by Shell NV in May of 2003 does not make Sol's interest anything less than reasonable.

During 2003, Shell PR was a licensee of Shell NV.  At that time, Shell PR operated a gasoline distribution network, through which service stations like LFSS sold gasoline, distributed by Shell PR, under the Shell trademarks, trade dress and logos.  LFSS unilaterally chose to terminate its relationship with Shell PR and sell inferior quality gasoline from its service station.  While selling the non-Shell gasoline, LFSS displayed the DEFENDA trademark as well as the Shell trade dress.  As explained by the Court in the December 2003 preliminary injunction order, the actions taken by LFSS were likely to cause confusion and to deceive purchasers concerning the source of the gasoline.  The entity most directly harmed by LFSS's deceptive actions was Shell PR.  Shell PR was neither remote from the injurious conduct, nor was the harm suffered by Shell PR an indirect result of LFSS's actions.  See Proctor & Gamble Co. v. Amway Corp., 242 F.3d 539, 562-64 (5th Cir. 2001), cert. denied, 122 S.Ct. 329 (2001); Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 233-35 (3rd Cir. 1998).  Thus the Court finds that Sol, as the successor to Shell PR, has a reasonable interest to be protected and has properly asserted a basis for standing pursuant to section 43(a).

**E.   Withdrawal of Reference from the bankruptcy court**

On July 5, 2007, Sol moved the Court for a withdrawal of reference pursuant to 28 U.S.C. 157(d) in relation to LFSS's proof of claim number 11 filed in the bankruptcy case.  (Docket No. 208)

LFSS described the basis for its proof of claim as "misbranding and
lost profits claims in civil no. 03-1623 FAB[.]" (Docket No. 208-2)
LFSS failed to oppose Sol's motion in the time allotted and the
Court withdrew reference for the claim.  (Docket No. 212)   Sol
later filed two follow-up motions.  (Docket Nos. 216 & 218)   The
first of the two contained, as an attachment, a motion filed by
LFSS in the bankruptcy court in which LFSS requested that Sol pay
it a minimum of $18,000 in monthly rent or, in the alternative,
that the rental contract be deemed terminated.  (Docket No. 216-2)
No additional motions filed in the bankruptcy court concerning
LFSS's claim number 11 have been brought to the Court's attention.

        LFSS's motion for additional rent, or in the alternative,
termination of the rental agreement, appears to be an attempt by
LFSS to make an end-run around the prior final ruling of the Court.
On January 31, 2007, the Court issued an Order in which it
dismissed with prejudice LFSS's claims of breach of contract and
for additional rent due.  (Docket No. 180)   In addition, the Court
issued a permanent injunction in which it, among other things,
ordered LFSS to allow Sol to continue in possession of the service
station until the expiration of Sol's rights pursuant to the lease
agreement.  (Id.)   In its motion to the bankruptcy court, LFSS
raises a different argument than it raised before the district
court.  LFSS argues that the lease and retailer agreements should
be interpreted as one agreement and, therefore, Sol's alleged

violation of the minimum sale provision of the retailer agreement
constitutes a violation of the lease agreement.  The last argument
raised by LFSS before the Court concerning rent due to LFSS, on the
other hand, was that a temporary rent benefit that Shell PR paid to
LFSS in late 2000 and early 2001 was still due to LFSS.  (Tr.
Jan. 29, 2007, pp. 48-56.)   The fact that LFSS presented a
different legal theory to support its claims for increased rent or,
in the alternative, termination of the lease does not allow LFSS to
bypass the preclusive effect of the Court's January 31, 2007 Order.
LFSS's new argument is not based upon new facts or new law, or a
claim that the Court's earlier ruling was based upon a manifest
error of law or fact; the new argument could have been raised
earlier in the Court.  Thus, the Court finds that LFSS waived its
additional arguments for imposing minimum rent or, in the
alternative, terminating the lease agreement.  For this reason, the
Court hereby denies LFSS's proof of claim number 11[9] and the motion
filed in the bankruptcy court on June 27, 2007. (Docket No. 216-2)

## IV.  Conclusion

For the reasons stated above, the Court **DENIES** Sol's request
for damages pursuant to 15 U.S.C. § 1117(c), and **DENIES** LFSS's
proof of claim for additional rent that was withdrawn from the
bankruptcy court.   The Court also **AMENDS** its order of

---

[9] To the extent that proof of claim number 11 involved the
issue of whether LFSS owed Sol statutory damages pursuant to the
Lanham Act, it was resolved above.

Civil No. 03-1623 (FAB)                                              23

January 31, 2007 to clarify that the Lanham Act portion of that order rested on a violation of the false designation of origin prong of 15 U.S.C. § 1125(a).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 23, 2008.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
